The Glynn Environmental Coalition v. Sea Island Acquisition Chief Judge Pryor, Judge Grant, Judge Kidd, may it please the Court, my name is Laura Heisel and I'm here with my co-counsel, John Bernini. We represent the appellants, citizens, in this Clean Water Act citizen suit. The issue in this appeal is whether the District Court erred when it allowed Sea Island Company to contest the jurisdictional status of its wetland. I'm going to go ahead and ask a question because I suspect that Chief Judge Pryor has some questions about the cause of action, but I would like to know specifically which factual allegations allow us to infer that a continuous surface connection linked the wetland to Dunbar Creek. Certainly, Judge Grant. In our pleadings, we included specifically an affidavit from our expert, Matt Sweissberg. That affidavit stated, and this is in the record, that there is a direct connection between the subject wetland and the adjacent salt marsh via culverts and pipes. Also in our pleadings is Sea Island's consultant's jurisdictional determination and the detailed notes from that jurisdictional determination that concluded that the wetland contained soils, the hydrological connection, and wetland vegetation that qualified it as a jurisdictional water of the United States. It seems to me that that was likely a very good set of allegations to meet the Rapanos test. I'm less sure that it's enough to meet SACIT. What do you think about that? Your Honor, under SACIT, the test is a continuous surface connection. In this case, this was a tidally influenced wetland. It's located on a barrier island, low-lying, a barrier island in the Atlantic Ocean. It's really an easy test. It's an easy determination compared to SACIT. Because there's tidal influence, and that was alleged and included in our expert's affidavit, tidal influence occurs on the surface. It does not occur underground. The SACIT decision actually included a note that accounted for tidally influenced waters and specifically said that in tidal influenced systems, the ebb and flow of the tide does not disconnect jurisdiction for the purposes of determining whether a wetland is a jurisdictional water of the U.S. I don't understand. Is it tidal influence that you are alleging, water that goes through these culverts, or is it water that connects in a different place in a different way? In this system, we have Dunbar Creek, which is classified as a traditionally navigable water. Then we have a salt marsh, and then through the salt marsh, yes, there are culverts and pipes which continue that connection between the subject wetland and the salt marsh, and then thence to Dunbar Creek. For the culverts and pipes to be enough, do you also need to show that the defendant was the one who put up the barrier, rather than that they kind of came upon the barrier and it was already there? Our position in SACIT is that the culverts and pipes were enough regardless of whether it was Sea Island Company that built the road with the culverts and pipes. In this case, because the surface connection is tidal, and that is a tidally influenced connection in which there was an exchange, a constant exchange, so yes, our position is that is enough. In our argument, we say that the district court did not look closely at this particular aspect of our expert's affidavit. It considered other factors and then drew inferences against the citizens in order to make his determination that the wetland was not a jurisdictional water of the United States. In this case, if the court had properly applied Rule 12b6, which is to consider all facts as true and draw all inferences against citizens, including Judge Grant, the inference related to the effect of Saltmarsh Road and the pipes and culverts underneath Saltmarsh Road, it could not have dismissed this case. I don't see how that establishes a continuous surface connection. The pleadings? The pipes and culverts, everything that you're talking about. I mean, the question that started all of this was about a continuous surface connection, and when I look at this, I just don't see where the complaint ever alleges facts that would support that. So our complaint, in that it includes... All the arrangements, everything that goes with it. We feel that when this case was dismissed, the judge improperly drew inferences against us based on those facts. In the alternative, Sackett had not been decided at the time that the pleadings were filed, and if this court would like to see the language, continuous surface connection, in Sackett, we would ask in the alternative. How come you didn't make that alternative request at the district court level? The reason that we did not make that request, Judge Grant, is because the motion to dismiss, which is pending, and this is the same motion to dismiss that was pending in 2022 and continues to be pending, did not make an argument that the subject wetland was not a jurisdictional water of the United States. It actually admitted that the wetland was jurisdictional and didn't question that throughout the appeal that you heard in 2022, and did not question that in the briefing when the case went back to the district court. It actually admitted that Sea Island was a company that had applied for a permit to fill a jurisdictional wetland on St. Simons Island. But I'm hearing, of course, a different test, right? I mean, having myself litigated on WOTUS issues for years, I think that the Rapando's test was pretty dramatically different than the Sackett test, so I'm just not sure why you wouldn't seek an opportunity to re-plead once you knew that there was a pretty significantly different test. The reason that we did not is, again, because that question was not pending before the court at that time in the motion to dismiss. The judge at the district court allowed additional briefing on the Sackett issue and then decided that issue not in our favor, but because the it was not a pending question in the motion to dismiss, we did not ask. I'll say this too. It's just not clear to me that the citizen supervision allows citizens to sue to enforce 404 permits. I'm responsible for that question being presented to you. I looked at the supplemental briefs that both sides filed, and I've got to say, I thought that your adversary's brief was far more persuasive. Judge Grant, in this case, we look at what the Clean Water Act says, and starting in section 505F, section F1 allows citizens to file suit for violation of section 301, and in turn, section 301 says that discharge is illegal except for in compliance with a permit. There's a decision in the Trafalgar Basin case that that statutory language is making clear that where you have a permit holder, you can sue about permits, but it's a different kind of permit, not this permit. You can't use the more general language that would apply to someone who doesn't have a permit. Where the Atchafalaya case erred is that it did not conduct a holistic analysis of the three sections that are applicable. The Atchafalaya court did not consider section 404P. I'm asking you what they consider the whole text of the statute. Your Honor, section 404P says that compliance with a section 404 permit is deemed compliance for section 505. In other words, it's a defense from a citizen suit, and why would you need 404P to establish that compliance with a permit was also compliance for purposes of section 505 and citizen suits if citizens were not able to file a suit. The Supreme Court actually considered this particular provision in the core Alaska, the Alaska Conservation Council case and said that section 404P protects citizens from enforcement actions by EPA or private citizens. We also explained, and I see I'm out of time if I may, that the legislative history and that when section 505 was first drafted by Congress, section 404 and 402 were combined at that point. Okay, let's hear from Mr. Fortuna. Thank you, Your Honor. I'm John Fortuna on behalf of Seattle & Company. Chief Judge Pryor, Judges Grant and Kidd, may it please the Court. Your Honors, this case should be dismissed. The only question the Court needs to... The case was dismissed. I'm sorry. The district court judgment should be affirmed. The only question this Court needs to resolve is a basis on which to do so. Tell us what you think the simplest and cleanest way would be to do so. I think the simplest and cleanest way forward is a Jaffa lie, Your Honor. I don't believe that section 1365 grants jurisdiction for claims alleging violations of section 404 permits. What about the discernment she just raised about P? Your Honor, we addressed this in our supplemental brief. We don't think that that section really says anything about whether section 1365 allows citizen suits, and it certainly doesn't expand the Court's jurisdiction. It makes clear, just like the permit shield in section 402, that compliance with a permit is deemed to be compliance with the Act, including all of the provisions in section 301, not just section 1344. So it protects you against toxic pollutants, ocean dumping, all of the things that might be alleged for someone to come in and say, well, you had a permit for 404, but you violated some other provision. Your argument might be right, but I'm not convinced it's fair to characterize it as simple. Perhaps there are, indeed, simpler ways. Assuming, just for the purposes of argument, that we are looking for a simple solution in your direction, I'm not as confident as you are that that would be the simpler approach. Well, that's a fair question. Maybe I'd say they're equally simple. I don't know. I don't believe... So, your issue is that one of the simplest approaches would be the SACCET. I think SACCET certainly gives you a clean way to affirm the District Court's decision, which is plainly correct. Your Honor, it is not disputed that there's a wetland on Sea Island's property. The entire point of SACCET is that not all wetlands are regulated by the Federal Government, and we need bright-line, clearly applicable rules to identify the small subset that are. My main concern is whether disability here would set a standard that would require, at the complaint stage, a really vast amount of scientific evidence that it wouldn't always be feasible to have at the time of receiving the case. I don't believe it would, Judge Grant, and here's why. I mean, the SACCET test is very straightforward. I mean, it says in very straightforward terms that for a wetland to be covered under the Clean Water Act and regulated by the Federal Government, it must have a continuous surface connection with a covered water such that it is indistinguishable and not clearly demarcated from the covered water. And if it is... Somebody builds a road in the middle of it. Well, Your Honor, I think that there are situations, there might be situations, SACCET alludes to that possibility, that you can't come in and illegally build a road and then cut off jurisdiction. But there's no suggestion and certainly no allegation in this case that the road and the culvert was illegally constructed. That was there. The culvert had nothing to do with this project. It was already installed and the application materials make that clear. So I don't believe it requires... Do you know when it was installed? I do not know, Your Honor, but it was installed. Certainly, I mean, if you read the application materials attached to the complaint, it asks, there are, you know, checklists. Is a culvert required? And it's no. It says no every time. So there's no culverts associated with that. Where do we think the culverts and pipes that your opponents are relying on came from? Well, I think they were installed by a prior owner potentially to, you know, to convey stormwater. I mean, the only, all of the documents attached to the complaint make it crystal clear that the only connection between the wetland on one side of the road and the wetlands and the marsh and Dunbar Creek on the other side of the road is a storm drain. And according to the plaintiff's expert, that storm drain appears to only flow when it rains. And that is exactly the type of thing that Justice Scalia in the Rapano's case said pushed the Clean Water Act to parody. So it is not, this is not a, it's not hard to allege a continuous surface connection in a case like this. Or to allege facts that would allow it in. Well, and I want to be clear about that, Judge Pryor, because my colleague on the other side suggested that we should get, you know, grant leave to amend so that they could say there's a continuous surface connection. And that is not enough. I mean, a continuous surface connection is an allegation that is an element of a claim under the Clean Water Act. And so they have to allege facts showing why there's a continuous surface connection. They would have to allege facts showing how it is that there is a continuous surface connection between a wetland that's separated by another, from another wetland by a road and an underground storm drain. I don't know how they allege that, but that's what they would have to allege. They would have to allege facts showing why the wetland on this side of the road, which is separated by, well, actually an upland, or two roads, a median, another road with live oak trees that don't grow in wetlands, how that's not clearly demarcated from a covered water. I don't understand. Let me start right about one thing. You had raised what I'll call the Atchafalaya Basin argument in the district court, right? The district court just didn't reach it. And so you would say that that also provides an alternative ground to the Woodlawn record forever? Absolutely, Judge Pryor. This issue was raised in the district court. It was briefed extensively. Some of the briefs were attached in the supplemental filing. And, in fact, in one of the pleadings below, the plaintiffs identified this issue, the Atchafalaya issue, as the one issue outstanding from the motion to dismiss that the court needed to resolve. The district court didn't reach it because the attachments to the plaintiff's complaint, they didn't have to go there. But we'd have to either knock down both or ask the district court to have the opportunity to address that one way or another, right? I believe there's plenty here for this court to affirm the dismissal. And, you know, because Atchafalaya goes to the court's subject matter jurisdiction, I mean, I think this court could reach it regardless. I did want to address a couple of things that opponents said. You know, I would submit, you know, Judge Grant, you asked why was there not a motion for leave to amend. Well, that's a great question. And I would submit it's because the facts can't support it. I mean, if you look at the documents that are attached to the complaint, I don't know how you allege a continuous surface connection in a case like this. That may be right if you looked at facts that are outside of the record. But can the district court really make this judgment on the basis of these grainy black and white survey maps as opposed to more detailed factual data? Oh, I think there's no question about that, Judge Grant. And I would just, I'll tell you. You know, if you look at the documents that are attached to the complaint, which include the application that was submitted for the jurisdictional determination way back when under the old pre-SACIT test that the Supreme Court rejected, there is a host of information that the district court can and should and properly did consider. And a district court doesn't engage in, you know, unwarranted fact finding by looking at the documents plaintiffs attached to their complaint. Absolutely not. The law says it's not that. So just to walk through, how can you resolve it on this record? To begin, as the district court observed, the wetland that was filled in this case is separated and demarcated from other wetlands and ultimately Dunbar Creek by a salt marsh, a freshwater wetland fringe, an upland, two roads, a median, and it's connected by a storm drain. That's clear from the attachments. The record contains aerial photographs showing this. It contains surveys that show the wetland is clearly demarcated and the only connection is an underground storm drain. There are field sampling reports from the jurisdictional determination where they sampled in the wetland and it says that no surface water present. There are photographs of the wetland in the record attached to the complaint that show the typical wetland that was filled. And, Your Honor, it's filled with trees and bushes and shrubs. It's not even a water, much less a water of the United States. And then you have the storm drain. I mean, this is the quintessential not water of the United States, as Justice Scalia pointed out so many times in Rapanos. So, I mean, there might be a lot of facts that you could construe in the favor of the of the moving party. But in this case, where do you file the motion to dismiss? There are also facts, do you not agree, that could be construed in the opposing party's favor? And the question for us is whether the district court drew improper references and construed facts against the against the plaintiffs that shouldn't have been construed against them. That would be a fair question. And it is a fair question. I don't accept it, Your Honor. And I don't accept it for the reasons that I just said, which is that there wasn't this wasn't a of construing facts and drawing an inference. I mean, it's not enough to just say it's a water of the United States and have the court just infer that it's a jurisdictional wetland. That is not the way this works. Oh, I'm glad you reminded me of that, Judge Grant. Judge Grant, that there is no basis for that in the record. And the documents attached to the complaint absolutely contradict it. That is not sustainable. And let me just I mean, I'll just point out that Nationwide Permit 39 does not apply to tidal wetlands. It does not apply. You cannot use Nationwide 39 in tidal waters. You can't use Nationwide 39 in wetlands adjacent to tidal waters. So here the court went out and verified that this wetland was eligible for coverage under Nationwide 39. It can't be tidal. It is not tidal. The only suggestion in the in the affidavit by Mr. Schweisberg, it's not that there's a tidal connection between the wetland that was filled. When you read his affidavit, what he's saying is there's a tidal connection between the marsh on the other side of the road and Dunbar Creek. And what happens is when it rains, water runs off of Sea Island's property and into the wetland. And then it flows out the storm drain and into the marsh. And then the tide comes in and picks it up and takes it back out. And that's the tidal connection he's talking about. That is not a tidal connection. And it is not a tidal water in this case. I did I also wanted to point out, you know, the my co-counsel on the other side talked about the determination that the Corps made in 2013 that this wetland was jurisdictional. Your Honor, the Corps made no such determination. A preliminary jurisdictional determination is a finding that there, and I'm quoting from the document, may be jurisdictional waters that are potentially jurisdictional and filling them could require a permit. That's what a preliminary jurisdictional determination says. So there's no determination by the Corps that it was that this was what this wetland, you know, was jurisdictional and certainly no determination that it's jurisdictional under SACIT. The other thing I would point out, honestly, Your Honor, is that I think that the confirmation that the wetland is eligible for coverage under Nationwide 39 is actually sort of irrefutable proof that this is not a wetland covered by SACIT. SACIT makes it clear that wetlands are covered only if they are adjacent to a tradition to a water that's connected to a traditional navigable water. And by adjacent, that means touching, right? But if you can't use Nationwide 39 for a wetland that is adjacent to a tidal water, the Corps has said this is not adjacent. And you can look at the surveys and the photographs and see that it's not adjacent. It is not touching anything. There's a storm drain that runs through it. So, so that... Is the Corps bound under a preliminary determination? No, Your Honor, but I think that anyone, you know, who wants to review the attachments to the complaint can see this. And I would just submit, you know, you asked the question about fact-finding and drawing inferences. I would just point the Court to this Court's decision in Johnson v. City of Atlanta. In that case, it was a case alleging, you know, unlawful force against a police officer. We had body cam and dash cam footage showing the arrest. That video evidence contradicted the allegations in the complaint. That video evidence wasn't even referenced. It certainly wasn't attached to the complaint. It wasn't even referenced. But the Court held in an opinion by Judge Branch that we could go and look at it under the doctrine of incorporation by reference because it was a material to the claim and it was not disputed. And what the Court said is the video evidence contradicts the allegations in the complaint and the video evidence wins. Well, that sounds like something that was fairly straightforward. You could look at a video and compare that to what was alleged here. You have a judge right looking at, as Judge Grant said, some grainy old maps and deciding where things were or may not have been. And you have the claim alleging that while there might be certain, there might be a continuous connection under certain circumstances. So it seems like this is a much more complicated issue than the one you cited with the video and the police officer. Your Honor, if I might just point you to one document in the record because I, you know, I mean, we have photographs that are reproduced a bunch of times and they get scanned into Pacer and all of that stuff. If I might just point you to the Record Appendix, Volume 2, pages 179 and 182. These are surveys of the property. These are not grainy photographs. They're surveys that show a clear demarcation and a storm drain underneath and that's it. And it's attached to the complaint? Yes, it is, Your Honor. Okay, Mr. Green, you have four minutes for rebuttal. Yes, sir. May it please the Court. I'm John Bernini. And with apologies to my opposing counsel here, I'm not sure that there's anything simple and clean about any of this. But I will say that I think a place to start for this Court would be the waiver issue, which we haven't discussed much. But as opposing counsel said, the Corps of Engineers requires, in connection with the PJD, Preliminary Jurisdictional Determination, that someone sign a document that says this may be jurisdictional or potentially could affect. I'm not sure we should be discussing it since we're on rebuttal and it hasn't come up. But that determination was under a completely different standard, as we've already discussed. True. And so what Sea Island signed in that circumstance to obtain that permit was a contest in any federal court, the jurisdictional status of the waters in question, the subject wetland. Waiver is the intentional relinquishment of a known right. That's right. Would it be expected to waive in a context where it is not even clear that citizen suits are permitted? Well, fair question, Your Honor. I think the purpose of the waiver is it's in place because once wetlands are filled... It could be the Corps, but that doesn't necessarily answer the question here. Okay. I'll finish my statement and then try to answer your question. Once wetlands are filled, it is almost impossible to go back in time and determine the sensitive characteristics that constitute wetlands in the first place. That waiver was in place under the prior test, under Rapanos. The Corps still requires that waiver of applicants under SACCET, the new controlling law, which, as Judge Grant said, is very different from Rapanos. In terms of Atchafalaya, our position, which is clear in every... Your position is that they got it wrong. They got it wrong. They just got it wrong. And their decision, and it looks exactly right. Well, with deference, Your Honor, what Atchafalaya did was they ignored plain text and called a trial level... I mean, this is an expression of a case. By permitting it in this instance, this is necessarily the exclusion of what's not allowed. Understood, Your Honor. I think the opposing view... Even if the circuit was correct, wouldn't there need to be a specific analysis of each claim and whether it could survive for various other reasons? I think so, Your Honor. That the waiver would somehow bar us from doing that? Is that right? Our argument is we're here contesting what is and what is not a jurisdictional water when the plaintiff has given away that right and said they would never contest that because it's too hard to go back in time and figure out under any set of facts, under any set of legal tests, what should or should not be the case. And I think what Ms. Heisel stated and what we'll reiterate is after several years of litigation and multiple trips to this court, the citizens are now being exposed to dismissal for not meeting a test that wasn't the test when we filed our complaint. I mean, that's not law school, that's kindergarten. That can't be the rule. I continue to not understand why, if there are other facts that you could allege that would more clearly meet the SAT test rather than the Raponos test, why are you making that ask now instead of in front of the district court? Understood. And I'm out of time to answer your question. The procedural history in this matter is a little unusual in that the Sackett case came up on supplemental briefing. We were ruled against and we're now asking this court, if all else fails, we deserve leave to amend. I believe we could have, Your Honor. I think this court also has the power to reverse and remand and require that. Okay. We appreciate your argument. We understand the case. It's submitted and we are adjourned.